## ROYAL INDEMNITY CO. v. HOGAN et ux. (No. 11881.)

Court of Civil Appeals of Texas. Fort Worth. Dec. 3, 1927.

Rehearing Denied Jan. 14, 1928.

1. **Evidence** ⊜➾125—Declarations of deceased that he was driving car to test brakes held res gestæ in parents' action for his death.

In parents' action for death of son, killed while driving automobile for purpose of testing brakes, admission of testimony of coemployees that deceased stated he was going to drive car for purpose of testing it, and of young ladies whom he was taking home, that deceased stated he was driving car to see whether brakes worked, held proper since declarations made by deceased were contemporaneous with his act of driving car, were explanatory of purpose, and therefore admissible under rule of res gestæ.

2. **Master and servant** ⊜➾375(1)—Garageman killed while driving car to test brakes, but incidentally taking young ladies home, held engaged in "furtherance of employer's business" (Rev. St. 1925, art. 8309).

Garage employee who was killed while driving car for purpose of testing brakes, but who at time of accident was incidentally taking young

ladies home, *held* engaged in "furtherance of employer's business," within meaning of Rev. St. 1925, art. 8309, although violating employer's rules against carrying passengers.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Furtherance of Business.]

3. Trial ⬅350(6)—Refusal to submit insurer's requested issues in parents' action for death of son while driving automobile to test brakes held not error, where favorable finding would not have defeated recovery.

Refusal of court to submit issues to jury in parents' action against insurer for death of son while testing brakes of automobile *held* not error, where finding in favor of insurer on one or more of requested issues would not have defeated recovery, especially in view of fact that main requested issue was embodied in main charge.

4. Trial ⬅350(8)—Refusal to submit requested issues held not error, there being no conflict in testimony.

Refusal to submit requested issues to jury *held* not error, where there was no conflict in testimony bearing on any of those issues.

Appeal from District Court, Wichita County; W. W. Cook, Judge.

Proceeding under the Workmen's Compensation Law by A. V. Hogan and wife, claimants, for death of their son, opposed by the Royal Indemnity Company, insurance carrier. From a judgment for the claimants, the insurance carrier appeals. Affirmed.

Davenport & Crain, of Wichita Falls, for appellant.

Grindstaff, Zellers & Hutcheson, of Weatherford, for appellees.

DUNKLIN, J. The Royal Indemnity Company, who was an insurer against accidents, under the Workmen's Compensation Law (Rev. St. 1925, arts. 8306–8309), has appealed from a judgment rendered against it in favor of the plaintiffs A. V. Hogan and wife, for the death of their son, Worth F. Hogan, as the result of an accident sustained by him when a car in which he was riding was struck by another car. At the time of the accident, Worth F. Hogan was an employee of Langford Motor Company, doing business in the city of Wichita Falls, and that company was a subscriber to the Texas Employers' Insurance Association and had procured from the Royal Indemnity Company a policy of insurance against accidents to its employees. The plaintiffs first filed their claim before the Industrial Accident Board of the state of Texas and later prosecuted an appeal from the decision of the board to the district court of Wichita county where the accident ocurred and in which the judgment appealed from was rendered. The record shows an agreement between the parties in

the trial court that all steps necessary to make the policy sued on a valid ·and subsisting obligation at the time of the trial had been taken, and that the appeal had been duly prosecuted from the decision of the Industrial Accident Board to the district court.

According to allegations in plaintiff's petition, at the time of the accident the deceased was engaged in testing a Lincoln car which he was driving in order to locate any mechanical defects therein so that they could be repaired, and that such service was one of the duties of his employment with the Langford Motor Company, and was performed in the furtherance of the business of his employer, and that the injuries he received which resulted in his death had to do with and originated in said employment.

The defendant filed a general demurrer and a general denial, and in addtion thereto pleaded specially that at the time of the accident the deceased was operating the car without the consent or knowledge of his employer or any one in authority, and in driving the car was engaged upon an independent mission for himself and not in the performance of any duty of his employment; and in appellant's brief the following is said:

"The main contention made by the plaintiffs was that Worth F. Hogan was in the course of his employment at the time of his death, and the main contention of the defendant, Royal Indemnity Company, was that he was on an independent mission, and that he was killed while not in the course of his employment."

The uncontroverted proof introduced upon the trial of the case established the following facts: That the accident occurred in the afternoon of April 13, 1925, during the working hours of the deceased and under the terms of his employment. The car which the deceased was driving was a secondhand Lincoln which the motor company had on hand for sale. That Worth Hogan was employed by the Langford Motor Company doing business in the city of Wichita Falls as foreman and service manager of the repair department of that branch of its business handling Lincoln cars, and one of the duties of his employment was to see that the cars under his supervision were properly serviced and repaired, and to test the cars by driving them for the purpose of locating any defects in their construction or condition. That deceased took the car which he was driving at the time of the accident from the shop for the purpose of testing the brakes, and after leaving the shop, and within a short distance therefrom, he overtook Miss Cecil Adkins and Miss Frances Willan, two young ladies who were walking to their respective homes, and invited them to ride with him to their homes, which invitation was accepted, and those two young ladies were with him in the car at the

time of the accident, which occurred after he had driven them some seven or eight blocks.

W. S. Langford was the sole owner of the business transacted by the Langford Motor Company, and one Mr. Edwards was next to him in authority, and Claude S. Red was the general manager over the business handling Lincoln cars, and the deceased was employed by Red. Red was absent from the shop at the time the Lincoln car was taken out by the deceased and prior to the accident knew nothing of the circumstances which caused the deceased to drive the car on the occasion of the accident. Langford was absent from the city and was likewise ignorant of those circumstances. It was necessary to drive the cars on the highways of the city or county for the purpose of testing them for defects, and the deceased frequently made such tests under instructions of Red. Red did not know of any defects in the car prior to the accident and did not instruct the deceased to make the test. The deceased was a highly skilled mechanic and an efficient employee, was familiar with the rules of the service of his employer, and prior to the accident had never violated any rule or regulation of his employer. When the car was taken out by the deceased it was standing on the curb in front of the shop, due to the congestion of cars inside the shop. By one of the rules of the company its employees were forbidden to take passengers for rides while making tests of cars to discover defects therein. By another rule of the company employees were forbidden to drive the cars solely for their own personal use without the consent of the employer or some one in authority, and no one in authority had given the deceased permission to drive the car in question for his own private use.

The case was tried before a jury, and the followng are the special issues submitted to them, with their findings thereon:

"(1) Were the fatal injuries, if any, sustained by Worth F. Hogan, on April 13, 1925, sustained by him in the course of his employment for the Langford Motor Company?

"Instruction No. 1. In this connection you are instructed that the term 'injury in course of employment,' as used in this charge, shall include all injuries of every kind and character having to do with and originating in the work, business, trade, or profession of the employer, received by the employee while engaged in or about the furtherance of the affairs or business of his employer, whether upon the employer's premises or elsewhere. Answer. Yes.

"(2) Was it the sole purpose or intention of Worth F. Hogan, in making the trip in question on the occasion of and at the time of his sustaining the said fatal injuries, to take either or both of the young ladies home? Answer. No.

"(3) Was Worth F. Hogan, at the time of the accident, on an independent mission of his own? Answer. No."

[1] C. M. Tower and Roy Fox, who were employees of the Langford Motor Company

and worked with the deceased, testified that immediately before Worth Hogan left the shop with the Lincoln car, he stated to them that he was going out to drive a car for the purpose of testing it, and their testimony shows without question that he had reference to the Lincoln car which he afterwards drove.

Miss Cecil Adkins testified that she had Miss Willan got in the car with the deceased, the latter stating to them that he was trying out the car which he was driving in order to see whether or not the brakes thereon would work, and that after driving it a short distance he pushed on the brakes and then stopped suddenly and remarked that the brakes were working all right.

Assignments of error are addressed to the action of the trial court in overruling appellant's objections to all of that testimony, on the ground that the same was hearsay and therefore incompetent. Those assignments are overruled since the declarations so made by the deceased were contemporaneous with his act of driving the car, were explanatory of his purpose in so doing, and therefore were admissible under the rule of res gestæ. I. & G. N. Ry. Co. v. Anderson, 82 Tex. 516, 17 S. W. 1039, 27 Am. St. Rep. 902; 22 Corpus Juris, 446–448, and many decisions including those of the appellate courts of this state cited in the notes to the text; also Maryland Casualty Co. v. Kent (Tex. Civ. App.) 271 S. W. 929.

[2] Following are provisions of the Workmen's Compensation Law, as shown in article 8309, Rev. Statutes of 1925:

"The terms 'injury' or 'personal injury' shall be construed to mean damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom.

"The term 'injury sustained in the course of employment,' as used in this law, shall not include:

"1. An injury caused by the act of God, unless the employee is at the time engaged in the performance of duties that subject him to a greater hazard from the act of God responsible for the injury than ordinarily applies to the general public.

"2. An injury caused by an act of a third person intended to injure the employee because of reasons personal to him and not directed against him as an employee, or because of his employment.

"3. An injury received while in a state of intoxication.

"4. An injury caused by the employee's willful intention and attempt to injure himself, or to unlawfully injure some other person but shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere."

The facts recited clearly show that the injuries which Worth Hogan sustained had

to do with and originated in the business of his employer, and that they were received by him while he was engaged in or about the furtherance of that business, within the meaning of the statute quoted, and sustained the judgment rendered, notwithstanding the fact that as an incident to the performance of those duties he was violating one of the rules of his employment in taking the two young ladies with him in the car for a drive to their homes, and notwithstanding the further fact that he had no specific instruction from Red to make a test of the car he was driving. To hold that, although he was performing one of the duties of his employment, no right of action accrued because of a violation of some other rule of the employment, which was merely incidental to a performance of those duties and which were neither the sole nor contributing cause of the accident, would .be to read into the statute a qualification or condition which would make the absolute and unconditional right given by the statute a qualified or conditional right only. And this the courts are not authorized to do. Lumberman's Recip. Ass'n v. Behnken, 112 Tex. 103, 246 S. W. 72, 28 A. L. R. 1402; Kirby Lumber Co. v. Scurlock, 112 Tex. 115, 246 S. W. 76; Jones v. Casualty Recip. Exch. (Tex. Civ. App.) 250 S. W. 1073 (writ of error denied); Consolidated Underwriters v. Breedlove, 114 Tex 172, 265 S. W. 128, by Com. of Appeals.

In Quarles v. Lumbermen's Recip. Ass'n (Tex. Civ. App.) 293 S. W. 333, an employee of a planing mill owned by a lumber company, in violation of a rule of the company expressly forbidding him so to do, went into a box factory and there undertook to operate hazardous machinery, and while so doing was injured. It was held that he was not entitled to relief under the Workmen's Compensation Law because the work of operating the machinery in the box factory was not in the scope of his employment.

In Consolidated Coal Co. v. Ratliff, 217 Ky. 103, 288 S. W. 1057, by the Court of Appeals of Kentucky, a day coal laborer was killed while working in a mine at night without express permission of the foreman and solely for his own purpose and convenience, and it was held that he was not injured in the course of his employment, within the meaning of the Workmen's Compensation Law of that state.

In Leonard v. Cranberry Furn. Co., 150 Tenn. 346, 265 S. W. 543, by the Supreme Court of Tennessee, an ore shoveler was injured while loosening a supporting chain of floor doors of a freight car in violation of positive instructions of his employer, and it was held that he was not entitled to recover under the Workmen's Compensation Law of that state.

Each of those cases cited by appellant is clearly distinguishable from the case at bar, in that in each of those cases the employee was injured while performing some act in violation of a rule of employment specifically forbidding the act, while in the suit at bar the act of Worth Hogan in testing the car was in performance of a duty for which he was employed and was not forbidden by any rule of his employment. The taking of the young ladies to ride with him in the car and the testing of the car without specific instructions from Red were merely incidental and did not in any manner contribute to cause the accident.

Other assignments are presented to the refusal of the court to submit to the jury the following issues which were duly requested:

"No. 1. Was the deceased, W. F. Hogan, at the time of the accident driving a car belonging to the Langford Motor Company without the consent of Mr. C. S. Red or W. S. Langford?

"No. 2. Was it part of the duties of W. F. Hogan as an employee of the Langford Motor Company to take Cecil Adkins and the other lady home after his work hours were over at Langford Motor Company?

"No. 3. Was the deceased, W. F. Hogan, at the time of the accident in carrying the young ladies home doing anything to further the work, business, trade, or profession of the Langford Motor Company?

"No. 4. Was it part of the duties of W. F. Hogan as an employee of the Langford Motor Company to take young ladies home from work after he was off duty at the shop of the Langford Motor Company?

"No. 5. Did W. F. Hogan at the time violate a rule of the Langford Motor Company in taking Miss Cecil Adkins and her companion home on the evening of April 13, 1925, when he met his death?

"No. 6. Was the deceased, W. F. Hogan, at the very time of the accident in taking the young ladies home on an independent mission of his own?"

[3, 4] From the undisputed facts recited above and for the reasons already noted, findings in appellant's favor on any one or more of those requested issues would not have defeated a recovery. Furthermore, as noted already, there was no conflict in the testimony bearing upon any of those issues, in the absence of which the court was not required to submit them; and the principal issue requested as to whether or not the deceased was upon a private mission other than a mission for his employer was submitted by the court in the main charge and determined adversely to appellant.

Accordingly, all assignments to the refusal of those requested issues are overruled, and the judgment of the trial court is affirmed.