## Moles et ux. v. Three Points Coal Company et al.

(Decided January 15, 1929.)

R. L. POPE and F. L. HUFF for appellants.

LEE & SNYDER for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Charles F. Moles was employed by the Three Points Coal Company as a coal loader. Both he and the company had accepted the provisions of the Workmen's Compensation Act. Ky. Stats., secs. 4880-4987. On June 27, 1927, he was killed as the result of an accident growing out of and in the course of his employment. His father, George F. Moles, and his stepmother, Ollie Moles, presented a claim for compensation to the Workmen's Compensation Board. The claim was rejected on the ground that the applicants were not dependent on the deceased. On appeal to the circuit court the award was affirmed. From that judgment this appeal is prosecuted.

The question of dependency is the only one presented. George F. Moles testified that he lived in Alabama. Up until about eight years before he testified he had been a preacher. His health broke down and he quit preaching. Ollie Moles was his second wife. They had three children, one eight, one seven, and one two years of age. He owned a farm, consisting of 170 acres, worth, he thought, about $1,200, but for which he paid $2,400. There was an indebtedness against the farm of $800. There were some hills, but it was mostly bottom land. About 125 acres could be cultivated. If properly handled, it would produce about $1,200 a year. His son, Charles Moles, helped him with the crops when at home. In the year 1926 he helped with crops worth about $500. In the fall of that year he went to Texas. He came back home Christmas, and then went to Harlan. While at home he gave his father $100. In April, 1927, he came back to

Alabama, remained at home for a few hours, and gave his father $50. He hoboed his way from Texas, and had but little clothing when he arrived.

On the other hand, it was shown by the company that, when Charles F. Moles reached Kentucky in January, 1927, the only clothing he had on was a suit of overalls and low-cut shoes and no underwear. He was dirty, almost frozen, and announced to the company's manager that he was broke and had come back to get employment. Soon after he went to work, he purchased shoes, underwear, etc., and also ordered one tailored suit. He paid for these clothes on time, and had some one connected with the company to stand for them. His board at the company boarding house was $1.25 per day. He at no time had to pay over $20 a month at the boarding house. The amount drawn in cash by him up to the time he went on a visit to Alabama was $247.60.

The rule that the Compensation Board's findings of fact are conclusive, if supported by any competent evidence, is conceded; but it is insisted that there is no evidence whatever tending to show that George F. Moles and wife were not dependent on the deceased. In this connection it is claimed that all the evidence shows that during the last year of his life the deceased furnished at least $150 in money and services to the support of his father and stepmother, and that this evidence is not contradicted by proof that his father's reputation for truth and veracity was bad, or by proof of inconsistent statements, or by contrary evidence. It must not be overlooked that these are not the only methods by which a witness may be impeached. On the contrary, he may be impeached by facts and circumstances at variance with his testimony, and tending to show that the story he tells is altogether improbable. Though George F. Moles testified to contributions, one of $100 about Christmas time in 1926, and one of $50 the following April, he admits that when his son returned at Christmas he had practically no clothing and had hoboed his way from Texas. It is also shown without contradiction that, when his son reached Harlan, he had no clothes and was almost frozen. It further appears that he liked good clothes, and immediately laid in a supply, when he had the cash or his credit was good. The manner in which he returned to his father's home at Christmas, his condition while there, and the condition in which he arrived at Harlan, coupled with the

fact that he immediately laid in a supply of clothing, shoes, etc., as soon as he could get some one to stand for him, are clearly sufficient to negative the idea that he had $100 in his pocket when he reached home, or that he contributed that sum to his parents.

In view of these facts and circumstances, which render improbable the story told by George F. Moles, it cannot be said that the board's finding of fact is not supported by any competent evidence.

Judgment affirmed.