## Rex-Pyramid Oil Co. v. Magan.

June 17, 1941.

E. B. Anderson for appellant.

Otto C. Martin for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER—Affirming.

Appellee's deceased husband, Kenneth Magan, was employed by appellant, the Rex-Pyramid Oil Company, to pump oil into tanks located on lands under lease to it near Buford, Ohio county, Kentucky. When a tank was filled it was Magan's duty to call a gauger to measure the oil and release it in the pipe lines. In order to do so it was necessary, or at least customary, for him to use a telephone. Since appellant did not furnish one, it was necessary for him to leave the premises and avail himself of either of two phones in that community, one

of which was in the garage owned by Malcolm Barr. The leases on which Magan worked are referred to in the record as the Mahaney, Blair, and Stinett leases. The Mahaney and Blair leases were on the same side of the road as Barr's garage, but in order to reach the Stinnett lease from the garage it was necessary to cross the highway.

On July 11, 1938, Magan filled a tank and on the following day had been working on the Mahaney lease. In the afternoon of that day he left the premises and went to the garage to call a gauger. After making the call, he bought a soft drink, talked to several people and spent sometime in the office of the garage. It was his duty to start the pumps on the Stinnet lease at 3 o'clock P. M., and a few minutes before that time he remarked to Mrs. Abbie Barr that he must return to work. Thereupon he started through the garage, where he met Gordon Stinnett to whom he made the same remark. After talking a few minutes with Stinnett, he started out of the garage, near the exit of which was a water hose and a tub of water. Before departing he picked up the hose and endeavored to squirt water on Stinnett. They scuffled for a few minutes over possession of the hose. On one occasion Magan ran out of the garage, but not onto the highway; he immediately returned and obtained possession of the hose. Thereupon Stinnett went to the tub of water and seized a bucket for the apparent purpose of dashing water on Magan. The latter then discarded the hose; ran from the garage a distance of 20 or 30 feet to the highway; thence across the highway in the direction of the Stinnett lease, where he was due to commence work at 3 o'clock. On crossing the highway he was running, laughing, and looking back over his shoulder. He had traveled more than half the width of the highway when he was struck by an automobile driven by Rosel Park, receiving injuries from which he died. The accident occurred at 2:55 P. M.

Appellee filed claim for compensation before the Workmen's Compensation Board which, through one of its referees, awarded her compensation, but upon a hearing before the full board, the award of the referee was set aside and her claim dismissed. On appeal to the circuit court the action of the board was reversed

and judgment entered in favor of appellee, from which judgment the defendant below has appealed.

It is contended by appellant that at the time of the accident Magan was engaged in "horseplay" i. e., a sportive act of his own, and was not acting in the course of his employment and that the accident did not arise out of his employment. Appellee, of course, contends that the horseplay had ended, and that Magan had started to the Stinnett lease for the purpose of continuing the business of his employer; and although by looking back over his shoulder and laughing, he was guilty of contributory negligence, he was, nevertheless, killed by a hazard of the highway which it was necessary for him to cross in the course of his employment and that the accident therefore arose out of and in the course of his employment.

Since the facts are admitted, the question presented is one of law. Bates & Rogers Construction Co. v. Allen, 183 Ky. 815, 210 S. W. 467; Lockhart's Guardian v. Bailey Pond Creek Coal Company, 235 Ky. 278, 30 S. W. (2d) 955.

While a person injured or killed as a result of engaging in horseplay is not entitled to compensation under the Workmen's Compensation Act. Kentucky Statutes, Section 4880 et seq., Hazelwood v. Standard Sanitary Mfg. Co., 208 Ky. 618, 271 S. W. 687, nevertheless, he will not be denied compensation by reason of previously having been engaged in such play if, at the time of the accident, he was in the course of his employment and the cause or source of the accident was a hazard to which he was subjected by reason of his employment. But to become eligible to receive compensation in any case it is incumbent upon the claimant to prove that the death of or injuries to the employee arose out of and in the course of his employment. Those words are used conjunctively, not disjunctively, and impose a double condition upon the claimant, i. e., the burden of proving the injuries arose out of his employment, and also that the injuries arose in the course of his employment. Evidence establishing one condition without proving the other will not bring the claim for adjusted compensation within the statute. Warfield Natural Gas Co. v. Muncy, 244 Ky. 213, 50 S. W. (2d) 543.

The term "in the course of the employment" refers to the time, place, and conditions under which the accident occurred; while the words "arose out of the employment" refer to the cause or source of the accident. Phil Hollenbach Co. v. Hollenbach, 181 Ky. 262, 204 S. W. 152, 155, 13 A. L. R. 624. A workman is "in the course of his employment" when he is timely performing a duty for which he is employed and at a place where it is necessary or expedient for him to be in order to perform the work. In going to or from his work, or in going from one place of work to another, he may be "in the course of his employment", and he is not limited by the exact time he reaches the scene of his labor nor by the time he actually commences, resumes, or completes a particular duty attendant upon the performance of his work. On the contrary, he is permitted a reasonable time, space, and opportunity, both before and after, in which to commence, resume, or complete specific duties. Big Elkhorn Coal Co. v. Burke et al., 206 Ky. 489, 267 S. W. 142; A. C. Lawrence Leather Co. v. Barnhill, 249 Ky. 437, 61 S. W. (2d) 1; Harlan Gas Coal Co. v. Trail, 213 Ky. 226, 280 S. W. 954, 955.

In the case of Harlan Gas Coal Co. v. Trail, supra, it was held that the employee was "in the course of his employment" in going from a bathhouse, furnished by the employer, to the employee's place of work. In the case of Wilson Berger Coal Co. v. Brown, 223 Ky. 183, 3 S. W. (2d) 199, 200, the court said:

"There can be no doubt that an employee, while going to, or returning from, his place of work along a road leading over his employer's premises, and built and intended for his use, is still in the course of his employment, and if he is injured while so traveling, the accident is one arising out of and in the course of his employment."

Applying the above principles to the facts in this case, we find that to fulfill the duties imposed upon him by his employer it was necessary for Magan to go to the garage and use the telephone. It was likewise incumbent upon him to commence work on the Stinnett lease within 5 minutes after the accident occurred. Almost immediately before the accident he had expressed his intention of going to the lease to perform the duties of his employment and this intention was expressed to

two persons, neither in the presence of the other. It was necessary for him to cross the highway to reach the Stinnett lease. It will thus be seen that the elements of time, place, and conditions necessary to establish the fact that the deceased was "in the course of his employment" have been amply proven and the claimant is entitled to recover if the accident arose "out of his employment" and not out of the play with Stinnett.

If the servant in the course of his master's employment has to pass along a public street or highway and sustains an accident by reason of a risk incidental to the street, i. e., a hazard of the highway, the accident arises out of his employment. Case of Harry A. Cook (Employer's Liability Assurance Corp., Limited, Appt.), 243 Mass. 572, 137 N. E. 733, 29 A. L. R. 114; Louis Katz v. A. Kadans & Co., 232 N. Y. 420, 134 N. E. 330, 23 A. L. R. 401; Palmer v. Main et al., 209 Ky. 226, 272 S. W. 736, 738. In the last case the court quoted from Dennis v. A. J. White & Co., [1917] A. C. 479, Ann. Cas. 1917E, 325, 15 N. C. C. A. 294, as follows:

"If a servant in the course of his master's business has to pass along the public street, whether it be on foot or on a bicycle or on an omnibus or car, and he sustains an accident by reason of the risks incidental to the streets, the accident arises out of as well as in the course of his employment. The frequency or infrequency of the occasions on which the risk is incurred has nothing to do with the question whether an accident resulting from that risk arose out of the employment. The use of the streets by the workman merely to get to or from his work of course stands on a different footing altogether, but as soon as it is established that the work itself involves exposure to the perils of the streets the workman can recover for any injury so occasioned."

The hazard of a necessary journey is properly regarded as a hazard in the service of the employment, and hence an accident which resulted from the hazard of the journey in such case is one which arose out of the employment. Voehl v. Indemnity Insurance Co., 288 U. S. 162, 53 S. Ct. 380, 382, 77 L. Ed. 676, 87 A. L. R. 245. Since it was necessary for Magan to cross the highway in going from one place of work to another and his death was caused by his collision with an automobile traveling

on the highway where it had a right to travel, the accident resulted from a hazard of the journey necessary to his employment and hence arose 'out of' his employment.'' Warfield Natural Gas Co. v. Muncy, supra [244 Ky. 213, 50 S. W. (2d) 544].

The only facts established which might lend any weight to the contention of appellant that Magan at the time of the accident was still engaged in play is the evidence that he left the garage as soon as Stinnett obtained a bucket of water and was about to throw the water on him, and that he was looking over his shoulder, laughing, and running, at the time of the accident. We believe that evidence to be insufficient to overcome the presumption raised by the evidence hereinabove discussed. True it is, in running, laughing, and failing to keep a lookout, the deceased was not exercising any appreciable degree of care for his own safety and was, as a matter of law, guilty of contributory negligence; but contributory negligence of itself is not a defense to a claim under the Workmen's Compensation Act. Meem-Haskins Coal Corp. v. Watts, 242 Ky. 643, 47 S. W. (2d) 82; Harlan Gas Coal Co. v. Trail, supra.

One of the goals to be attained in the scuffle with Stinnett was possession of the hose. This goal had been attained by Magan before he left the premises; in fact, he voluntarily relinquished possession of the hose before he left the premises. It was not necessary for him to cross the highway to remain out of reach of Stinnett and the bucket of water, but it would have been necessary for him to have remained in or near the garage to have continued the play. The fact that Stinnett had possessed himself of an instrument which placed him in position to get the better of the friendly combat might have caused Magan to decide to then quit play and return to work, but with the reason for this decision we are not concerned. We think the evidence shows the decision to have been made and acted upon. If while he was waiting for the time to arrive for him to resume his duties for his employer he engaged in a bit of horseplay, that fact will not militate against the claimant's right, otherwise established, to receive compensation for his death. ''A workman who is obliged to wait for a suitable time before the active discharge of his duty begins, or on account of an unexpected cessation thereof, must be al-

lowed some freedom of choice as to the particular place at which he will spend his time.'' Warfield Natural Gas Co. v. Muncy, supra.

Since the judgment of the lower court conforms to the views herein expressed, it must be, and hereby is, affirmed.